**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

DENNIS R. STIFF                                                    CASE NO. 12-53085

DEBTOR

SAMUEL K. CROCKER, U.S. TRUSTEE                               PLAINTIFF

VS.                                              ADVERSARY CASE NO. 13-5030

DENNIS R. STIFF                                                    DEFENDANT

<u>**MEMORANDUM OPINION**</u>

In this Chapter 7 case, the United States Trustee seeks to deny the Debtor's discharge

under 11 U.S.C. §§ 727(a)(3) and 727(a)(5) because of the Debtor's failure to keep records

detailing the disposition of certain assets, and his failure to explain the loss of those assets.

Those assets include large withdrawn sums of cash, funds raised in "investment pools" to

purchase stallion seasons and broodmare prospects, shares of a syndicated racehorse, and funds

borrowed from several persons.

Debtor moves for summary judgment, arguing that the assets on which the U.S.

Trustee's action is premised, which were acquired three to ten years before Debtor's bankruptcy

case, date back too far to be the basis for the denial of his discharge.   Whether an unaccounted

transaction is too old to be the subject of a § 727 action is a question of fact, not a question of

whether those transactions occurred within an inflexible two-year look-back period, as Debtor

urges.  In a § 727(a)(3) (recordkeeping) action, whether a transaction is too old to justify denial

of a discharge will depend on its materiality to the debtor's financial condition, and on whether

the debtor's failure to keep records of a certain age is reasonable given the nature of the debtor's

business, his financial sophistication, and other related factors.  In a § 727(a)(5) (failure to

explain the loss of assets) action, whether a transaction is too old to justify denial of a discharge

will depend on its materiality.  Debtor has pointed to no evidence, in support of his request for

summary judgment, on either the materiality of the transactions on which the U.S. Trustee

relies, nor on the reasonableness of his recordkeeping practices.  The Court therefore denies

Debtor's motion for summary judgment.

### I.     Facts and Procedural History.

Debtor filed a Chapter 7 petition for bankruptcy on December 7, 2012.  [Bk. Doc. 1.][1]

Debtor listed nine judgment debts on his petition.  [*Id.* at 6.]  On March 15, 2013, several of

Debtor's scheduled judgment creditors filed a nondischargeability action, generally alleging

that their judgments against Debtor were for fraud and hence non-dischargeable.  [Bk. Doc. 14.]

On June 7, 2013, that adversary proceeding was voluntarily dismissed.  [AP 13-5010, Doc. 14.]

On August 28, 2013, the U.S. Trustee filed this adversary proceeding, objecting to Debtor's

discharge under 11 U.S.C. §§ 727(a)(2)(A) (concealment of assets with intent to hinder or delay

creditors), 727(a)(3) (failure to maintain records), and 727(a)(5) (failure to explain the loss of

assets).  [AP Doc. 1.]  The U.S. Trustee subsequently dismissed the § 727(a)(2)(A) count [AP Doc.

17], explaining at the hearing on Debtor's motion for summary judgment that he dismissed the

count because he was unable to find evidence that Debtor concealed any assets within one year

prior to the commencement of Debtor's case, as § 727(a)(2)(A) requires.

Debtor moved for summary judgment.  [AP Doc. 23.]  In his response to Debtor's motion

and exhibits thereto [AP Doc. 26], the U.S. Trustee provided the following facts, none of which

Debtor disputes.  Prior to the filing of his case, Debtor was a self-employed horseman and

---

[1] References to the docket in Debtor's main bankruptcy case appear as [Bk. Doc. __].  References to the docket in the adversary proceeding appear as [AP Doc. __].

bloodstock agent who did business as, inter alia, Bay Bloodstock.  Bay Bloodstock had a bank

account at Central Bank, on which Sheila Bayes, a friend of the Debtor, was the only signatory.

The Debtor, apparently with Ms. Bayes's permission, signed Ms. Bayes's name to checks

payable to himself.  From May 17, 2002 to November 21, 2006, Debtor wrote checks totaling

$407,395 to himself from the Bay Bloodstock account, $291,965 of which he deposited into his

personal account at Citizens Commerce National Bank.  The remaining $115,430 is

unaccounted for.

Debtor also drew substantially on his Citizens Commerce National Bank account.

Between December 2003 and June 2009, Debtor made ATM withdrawals exceeding $83,000 from

this account, and wrote $43,545 in checks to cash.  Of this cash, $48,116.76 went to pay child

support, leaving $78,428.24 unaccounted for.  In total, Debtor has not accounted for

approximately $194,000 of cash, withdrawn over a seven-year period dating from three to ten

years before the filing of Debtor's bankruptcy case.

The U.S. Trustee also points to gaps in Debtor's business records.  In 2003, Debtor

syndicated a stallion, Equality, into 40 fractional shares, 26 of which Debtor sold from 2003 to

2004.  The Debtor's records are silent on the disposition of the 14 remaining shares, while

Debtor's tax returns are silent on the sale of 28 of these shares.  In 2004 and 2005, Debtor

solicited funds to purchase stallion seasons and broodmare prospects; a prospectus declared

Debtor's intention to raise $200,000 to purchase the former.  The solicited funds were deposited

into Bay Bloodstock's account, but Debtor could not produce to the U.S. Trustee an accounting

of how the funds were spent, or of how much he solicited.  Finally, the Debtor provided the U.S.

Trustee with two notes payable, one dated August 2004 for $55,000, and the other dated

December 4, 2006 for $35,000.  Debtor, however, provided no records regarding the disposition

of these funds, nor could the U.S. Trustee's accountant locate them in the bank accounts Debtor

3

controlled.

Debtor replied to the U.S. Trustee's response to his motion for summary judgment, continuing to press his argument that the transactions on which the U.S. Trustee relies are too stale to ground the U.S. Trustee's action. [AP Doc. 27.] In support of his motion, Debtor attached to his reply an affidavit, stating that Bay Bloodstock was never incorporated nor registered as an LLC, that it never had any employees, that Debtor's highest degree is a high school diploma, and that he has always used cash to pay for "a lot" of his living expenses. [*Id.* at 13.] Debtor also attached his individual tax returns from 2002 to 2012. [AP Doc. 27-1.] The Court heard Debtor's summary judgment motion on December 4, 2013.

II.     Analysis

A.   Jurisdiction and Summary Judgment Standard.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56 in adversary proceedings). The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a

4

summary judgment motion, the nonmoving party may not rest upon the pleadings but must go

beyond the pleadings and "present affirmative evidence in order to defeat a properly supported

motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The

Court's task is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine

issue for trial exists when there is sufficient "evidence on which the [court] could reasonably

find for the plaintiff." Id. at 252. "The court need consider only the cited materials, but it may

consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

>    B.   § 727(a)(3)

The U.S. Trustee objects to Debtor's discharge under 11 U.S.C. § 727(a)(3). Section

727(a)(3) provides that the Court shall not grant a debtor a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve
>
> any recorded information, including books, documents, records, and papers, from which
>
> the debtor's financial condition or business transactions might be ascertained, unless
>
> such act or failure to act was justified under all of the circumstances of the case.

Courts applying § 727(a)(3) have uniformly held that it contemplates a burden-shifting

framework. *See, e.g.*, *Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 829 (Bankr. N.D. Ohio

2004); *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882–83 (B.A.P. 6th Cir. 1999). The

party objecting to discharge must prove not only that the debtor has failed to keep records, but

also that the missing records are of the kind required by § 727(a)(3), thereby imposing  a

materiality requirement on that party.[2] Once, however, the plaintiff meets that burden, the

---

[2] A question the Court does not reach at this time is what records § 727(a)(3) requires. Many courts,
following a case of the Third Circuit, hold that a creditor must show that the debtor has failed to keep
records the absence of which "makes it impossible to ascertain the debtor's financial condition and
material business transactions." *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992); *see Razzaboni v.*

burden shifts to the debtor to justify the lack of records.

Debtor argues that the U.S. Trustee's § 727(a)(3) action fails because all of the transactions on which the U.S. Trustee relies predate Debtor's bankruptcy case by more than two years. Initially, it is unclear to which of the steps of the § 727(a)(3) burden-shifting framework this argument is directed. Debtor could be arguing that records more than two years old are not, as a matter of law, records "from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3). Alternatively, Debtor may be arguing that, as a matter of law, his failure to keep records more than two years old is "justified under all the circumstances of the case." *Id.* Debtor's motion for summary judgment and reply to the Trustee's response do not explicitly state which argument Debtor is making.

The ambiguity of Debtor's pleadings notwithstanding, the Court thinks it tolerably clear that Debtor is making the latter argument–that it is per se reasonable to not keep records more than two years old. First, the cases on which Debtor relies for the two-year look-back period hold that two years is a reasonable period for which to keep records, not that records older than two years are irrelevant to a debtor's financial condition or business transactions. For example, Debtor cites *In re Michael*, 433 B.R. 214 (Bankr. N.D. Ohio 2010), which, in holding that four-year-old missing records were not sufficient grounds for a denial of discharge, reasoned as follows:

---

*Schifano (In re Schifano)*, 378 F.3d 60, 70 (1st Cir. 2004) (following *Meridian Bank*). Other courts, reasoning that the impossibility test deviates from the language of § 727(a)(3), which speaks of records from which the debtor's financial condition "might be ascertained," only require a § 727(a)(3) plaintiff to prove an absence of records from which the debtor's financial condition or business transactions might be ascertained. *See In re Devaul*, 318 B.R. at 834. The Court does not rule on which of these tests is the correct one, as the Court does not understand Debtor's request for summary judgment to be addressed to the materiality of the missing records. Likewise, the Court does not decide, today, that the U.S. Trustee has met his burden to prove that Debtor failed to keep records of the kind § 727(a)(3) requires. The U.S. Trustee will have to meet that burden at trial.

> Old records are often destroyed. With this reality, § 727(a)(3) does not impose upon a
>
> debtor an obligation to keep and preserve financial records forever. Instead, § 727(a)(3)
>
> only imposes upon a debtor a duty to keep and preserve financial records for a
>
> reasonable period of time, with two years having been used as a minimum point of
>
> reference.

*In re Michael*, 433 B.R. at 221. This passage is clearly directed to the reasonableness of debtors'
record-keeping, not to the immateriality of old records.

Second, while the Court does not rule at this time on whether the missing records the
U.S. Trustee has pointed to are sufficiently material to Debtor's financial condition or business
transactions, *see ante* at 5 n.2, it would be difficult at best for Debtor to argue, on the basis of age
alone, that the records all fall outside the ambit of § 727(a)(3). For example, the fact that Debtor
borrowed $55,000 eight years before the filing of his bankruptcy, and $35,000 six years before
the filing of his bankruptcy, hardly makes the disposition of those funds–were they spent,
retained, invested, and if the latter, profitably or unprofitably?–immaterial to Debtor's present-
day financial condition. Similarly, while the age of the Equality syndication agreement may
ultimately bear on the materiality of the missing shares, e.g. if Equality were dead and shares of
his proceeds rendered valueless, its age alone does not mean that whether Debtor retained or
disposed of the missing shares is immaterial to his financial condition. Therefore, the Court will
take Debtor to be making the more reasonable argument–one supported, at least partly, by
caselaw–that it is reasonable to fail to keep records of more than two years of age, whether
material or not.

Though more reasonable than the alternative construction of Debtor's argument, this
argument fails. Section 727(a)(3) does not contain a statute of limitations, and the courts that
have written of a two-year look-back period have all been careful to provide that such a period

is not a hard-and-fast rule, and only applies, if at all, in the ordinary consumer case. *Michael*, already cited, refers to two years as a "*minimum* point of reference" in the context of an ordinary consumer case. *In re Michael*, 433 B.R. at 221 (emphasis added). Other courts say much the same thing. *See Menotte v. Hahn (In re Hahn)*, 362 B.R. 542, 548 (Bankr. S.D. Fla. 2007) ("[S]ection 727(a)(3) . .. is understood to encompass at least the two year period prior to the filing of the bankruptcy petition"); *Losinski v. Losinski (In re Losinski)*, 80 B.R. 464, 474 (Bankr. D. Minn. 1987) ("In the ordinary consumer bankruptcy case, it is probably reasonable to limit an inquiry under § 727(a)(3) . . . to a period of two years before the commencement of the case . . . However, the Bankruptcy Court should not circumscribe the inquiry . . . by setting a hard-and-fast rule."). Even, then, in the ordinary consumer case, application of a two-year look-back period will turn on the circumstances and facts of the individual debtor's case.

More importantly, in cases involving self-employed debtors who fail to keep records material to their business dealings, courts have not applied a two-year look-back period. Instead, they have looked to reasonable recordkeeping practices in the business in which the debtor is self-employed, on the theory that "[d]ebtors have a duty to preserve those records that others in like circumstances would ordinarily keep." *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000). As one sister court in this Circuit has held, in such a case, a court "must view the adequacy of the debtor's books and records . . . on a case-by-case basis, according to the special characteristics of the debtor's occupation, business, and personal financial structure." *James v. McCoy (In re McCoy*, 114 B.R. 489, 500–01 (Bankr. S.D. Ohio 1990). Other courts have recited a multiplicity of factors bearing on the adequacy of debtors' business records, including the complexity and size of the debtor's business, the debtor's education and sophistication, and the customary recordkeeping practices in the debtor's type of business. *See, e.g., Vandenbogart v. Minesal (In re Minesal)*, 81 B.R. 477, 481 (Bankr. E.D. Wis. 1988). Some cases

8

inquire quite specifically into recordkeeping practices in the type of business in which debtors

are engaged.  For example, the Fifth Circuit, in a case, decided under a materially identical

provision in the Bankruptcy Act of 1898, that involved a debtor who sold Christmas trees,

reversed the bankruptcy court's denial of discharge and remanded for the bankruptcy court to

"hear[] evidence concerning the practices of Christmas tree salesmen," which the bankruptcy

court had previously failed to do.  *Bartolotta v. Lutz*, 485 F.2d 227, 229 (5th Cir. 1973).

Needless to say, no analogous record concerning the recordkeeping practices of

bloodstock agents has been developed in this case.  Nor has any record been made on the

complexity of Debtor's business, or his sophistication, both of which were disputed by the

parties at the hearing on Debtor's motion for summary judgment.[3]  Indeed, the current record

only sparingly addresses the sorts of equestrian dealings in which Debtor was engaged, and

sheds little if any light on the nature of the transactions that are discussed in the record.  To

determine the adequacy of Debtor's records, the Court must know more about Debtor's

business–and about the Debtor.  The Court therefore denies Debtor's request for summary

judgment on the § 727(a)(3) count.[4]

   C.   § 727(a)(5)

The U.S. Trustee also objects to Debtor's discharge under § 727(a)(5), which provides

that the Court shall not grant a discharge if "the debtor has failed to explain satisfactorily,

before determination of denial of discharge under this paragraph, any loss of assets or

---

[3] Debtor has testified, in his affidavit, that he only has a high-school education.  AP Doc. 27 at 13.
Educational attainment, however, is only one factor in assessing a debtor's sophistication for purposes of
adjudicating the reasonableness of his record-keeping; more important is a debtor's financial
sophistication, whether acquired by higher education or by other means.
[4] The Court's denial of summary judgment rests solely on Debtor's missing business records.  A
§ 727(a)(3) action resting solely on Debtor's missing records of cash expenditures dating back three to ten
years prior to bankruptcy would present decidedly different issues, not decided here.

deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The U.S. Trustee relies on the same transactions supporting his § 727(a)(3) claim; that is, the U.S. Trustee argues that Debtor has failed to explain the loss of the cash he withdrew from 2002 to 2009, the shares of Equality, the funds solicited to invest in stallion seasons and broodmare prospects, and the funds owed on the 2004 and 2006 notes payable.

Section 727(a)(5), like § 727(a)(3), contemplates a burden-shifting framework. Initially, the plaintiff in a § 727(a)(5) action has the burden to identify assets which the debtor at one time owned and claims, in his schedules, to no longer possess. *See PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 116 (Bankr. W.D. Pa. 2000). Once having met that burden, the burden shifts to the debtor to offer a satisfactory explanation of the loss of assets. *Id.* Section 727(a)(5), while serving a similar purpose to § 727(a)(3), differs from § 727(a)(3) in several respects. First, § 727(a)(5) concerns itself exclusively with the loss of assets, while § 727(a)(3) is not limited to records documenting the disposition of lost assets. Second, to prevail on a § 727(a)(5) action, a debtor must offer a satisfactory explanation of a loss of assets, whereas in a § 727(a)(3) action a debtor may prevail by showing only that his failure to keep or preserve records documenting the disposition of lost assets was reasonable. Third, a debtor can defeat a § 727(a)(5) action by offering persuasive testimonial explanations of his loss of assets, *see Buzzelli*, 246 B.R at 117; *Losinzki*, 80 B.R. at 470, while a testimonial explanation of lost assets will not defeat a § 727(a)(3) action absent a reasonable explanation of the absence of records of same.

As with the Trustee's § 727(a)(3) count, Debtor argues that the assets in question were acquired too long before the filing of his bankruptcy case for their unexplained loss to be the grounds of a denial of discharge. Here too, Debtor contends that a two-year look-back period is appropriate, and here too, that position is not entirely unsupported by caselaw. Yet, here too, none of the cases which support Debtor's position adopt the absolute rule Debtor argues for.

10

One such case notes that, "as [a] factual matter, a focus on the two years prior to the debtor's petition filing is common, but inquiries extending beyond two years certainly occur when warranted." *First Commercial Fin. Group v. Hermanson*, 273 B.R. 538, 552 (Bankr. N.D. Ill. 2002) (citations omitted).  Another case held that assets lost over two to six years prior to bankruptcy were "too remote to support a section 727(a)(5) claim," but cautioned that "[h]ow long ago is too long ago depends on the case; there is no hard and fast rule." *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 741 (Bankr. N.D. Ill. 2004).

While caselaw acknowledges both that a two-year look-back period in § 727(a)(5) actions is typical and that circumstances may warrant a longer look-back period, courts are virtually silent on what circumstances warrant such an extension.  That said, a look at the cases that do extend the look-back period past two years reveal, unsurprisingly, a common factor: lost assets of substantial value relative to debtors' liabilities.  *See Blackwell Oil Co. v . Potts (In re Potts)*, 501 B.R 711 (Bankr. D. Colo. 2013) (extending the look-back period to four to seven years in a case involving $1.4 million of unaccounted-for funds and assets in debtor's business); *Hermanson*, 273 B.R. at 551-52 (extending the look-back period to six years in a case involving the loss of several million because "the dissipation of assets during the six years prior to [debtor's] petition was considerable"); *In re D'Agnese*, 86 F.3d 732 (7th Cir. 1996) (extending the look-back period to nine years in a case involving $300,000 worth of unaccounted jewelry and Waterford crystal). This concern with the size of lost assets in determining how long to look back is, in the Court's view, highly appropriate; the text of § 727(a)(5) itself directs the court to look to "any loss of assets or deficiency of assets *to meet the debtor's liabilities*." 11 U.S.C. § 727(a)(5) (emphasis added).  As § 727(a)(5) is, on its face, concerned with lost assets that would help "meet the debtor's liabilities," it is appropriate to deny a discharge where a debtor cannot explain the loss of assets that would go a long way towards meeting creditors' demands.  Extending the look-

11

back period only in cases of considerable lost assets also substantially decreases the risk that debtors' discharges will be denied on account of good-faith memory losses regarding the disposition of assets.

In this case, as the U.S. Trustee wisely emphasizes, Debtor's schedules reflect only $14,000 in assets to meet unsecured claims of over $700,000. The U.S. Trustee points to lost assets of approximately $284,000 in cash and notes payable, in addition to the untold value of the missing Equality shares, and the unknown amounts of funds Debtor solicited to purchase stallion seasons and broodmare prospects. As to Debtor's unaccounted cash withdrawals of $194,000, the Court holds that the amount is substantial enough, relative both to Debtor's liabilities and the small amount of assets listed on Debtor's schedules, to justify extending the look-back period to three to ten years prior to Debtor's bankruptcy case, which is when Debtor withdrew the cash. The Court holds the same of the $90,000 in notes payable, borrowed six to eight years prior to Debtor's bankruptcy case. Debtor will be required to provide some explanation of the disposition of these assets at trial. As to the shares of Equality and investments in stallion season and broodmare prospect investment pools, the record is silent as to the value of the shares and the amounts invested in the investment pools (with the exception of Debtor's stated intention to raise $200,000, a substantial sum, to purchase stallion seasons). Whether these assets are sufficiently material to justify extending the look-back period to seven to nine years prior to Debtor's bankruptcy case, when these assets were acquired, will depend in large part on evidence as to their value. Given the uncertainty as to the value of these assets, summary judgment in Debtor's favor as to these assets is not appropriate.

III.   <u>Conclusion</u>

The Debtor's motion for summary judgment on the U.S. Trustee's § 727(a)(3) claim is denied.  The Debtor's motion for summary judgment on the U.S. Trustee's § 727(a)(5) claim is denied as well.

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
**_Joe Lee_**
**Bankruptcy Judge**
**Dated: Monday, July 14, 2014**
**(jl)**